**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NATHAN B. CAMPBELL,          :
                             :
    Plaintiff,               :      Case No. 3:09-cv-435
                             :
    vs.                      :      Judge Timothy S. Black
                             :
SHERIFF GENE A. KELLY, et al.,   :
                             :
    Defendants.              :
                             :


**DECISION AND ORDER THAT DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT (Doc. 37) IS GRANTED IN PART AND DENIED IN PART**

This civil action is before the Court on Defendants' motion for summary judgment

(Doc. 37) and the parties' responsive memoranda (Docs. 46, 49).

## I. BACKGROUND

This case derives from Plaintiff's employment with Defendant Clark County

Sheriff's Office ("Sheriff's Office") as a deputy sheriff and lone member of the K-9 Unit.

Following a car accident and serious injury, and after years of service in the K-9 Unit,

Plaintiff was stripped of his K-9 Unit duties. Plaintiff subsequently initiated this seven

count complaint, alleging violations of both federal and state law. Defendants[1] now seek

summary judgment as to each count, which motion Plaintiff opposes.

_____

[1] Defendants include Sheriff Gene A. Kelly, Major Russell Garman, Lieutenant Donald A. Lucas, and the Clark County Sheriff's Office.

## II. FACTS[2]

Plaintiff began his employment with Defendant Sheriff's Office in 1988. (Doc.
39, Att. 1 at 14). After working initially on an uncompensated special commission basis,
Plaintiff was hired on a part-time and later a full-time basis at the jail, with duties similar
to those of a corrections officer, mainly working the third shift. (*Id*. at 16-18). Approxi-
mately two years later, Plaintiff began a 20-plus year career on road patrol, generally
working the second shift. (*Id*. at 18-23).

In 1998, Plaintiff personally purchased a dog, a German Shepherd named Apollo,
and paid to certify the canine to search for narcotics. (Doc. 39, Att. 2, Ex. A at 2, 4). In
1999, Plaintiff submitted a proposal to Defendant Sheriff Kelly to create a K-9 Unit
within the Sheriff's Office using Apollo. (*Id*. at Ex. A). While the proposal emphasized
that there would be no cost to the Sheriff's Office to create the unit and administer to
Apollo, the proposal also references the Fair Labor Standards Act ("FLSA") and
"compensation issues." (*Id*. at 2, 13).

Plaintiff maintains that Sheriff Kelly declined his proposal. (Doc. 46 at 6; Doc. 47
at 1). Defendants essentially elide this issue, but the K-9 Unit was not created until 2001,
when it was staffed by Plaintiff and Apollo. (Doc. 39, Att. 1 at 34-37). Plaintiff testified
in his deposition that he was given time off to have Apollo certified (*Id*. at 35), that the

---

[2] Upon the Court's requirement, Defendants submitted a set of proposed undisputed facts. (Doc. 40).
Plaintiff, in turn, submitted a response admitting or denying each proposed undisputed fact. (Doc. 47).
In addition, Plaintiff also put forth his own set of proposed undisputed facts, as well as proposed disputed
issues of material fact. (*Id*.). From these submissions, the Court has fashioned the following factual
narrative.

Sheriff's Office paid for some of Apollo's veterinarian bills (*Id.* at 61-62), that he discussed reimbursement with Defendants (*Id.* at 40-42, 51-53), and that he was told by Sheriff's Office officials that he would not receive reimbursement for dog food costs unless and until it obtained funds for the K-9 account (*Id.* at 53).

Apollo worked as the Sheriff's Office K-9 from 2001 to 2004, when, tragically, the dog was forced to retire due to work related injuries. (*Id.* at 59). Plaintiff purchased a second dog, Etzel, also a German Shepherd, put him through the requisite training, and initiated the new dog into the K-9 Unit. (*Id.* at 58-61, 85-88). Throughout Etzel's career, Plaintiff alleges he spent his time and money caring for and training the dog, but was never compensated for this off-duty, overtime work, and he was rarely reimbursed for his monetary outlays for Etzel. (*Id.* at 366-367).

Plaintiff worked under two essentially identical collective bargaining agreements, although he asserts that they are silent regarding issues related to the K-9 Unit. (Doc. 39, Att. 2 at Exs. L, M). The agreements did prescribe a procedure for submitting overtime request forms, which Defendants maintain Plaintiff used repeatedly yet never for time spent training and caring for the police dog. Plaintiff alleges that he attempted to do so and was either rebuffed or discovered that Defendants were misplacing them. (Doc. 39, Att. 1 at 40-42, 165-171). He also asserts that he kept detailed records of his work with the dog, but that they were destroyed under disputed circumstances. (Doc. 39, Att. 1 at 107-116, 121-122). The agreements also dictate the grievance process, which Plaintiff admittedly never used to challenge his allegedly insufficient compensation. (Doc. 40, p. 4 at ¶ 11; Doc. 46, p. 4 at ¶ 11).

On November 26, 2008, Plaintiff and Etzel were injured in a car accident - Plaintiff severely so - while Plaintiff was on duty. (*Id*. at 63). Plaintiff's injuries required him to take a paid medical leave from this position for some ten months, through September of 2009. (*Id*.). Shortly before Plaintiff was to return from medical leave, Defendants informed him that they were restructuring the K-9 Unit and that he would no longer work in it. (Doc. 46 at 9; Doc. 37 at 3). Ultimately, the restructuring did not take place and Defendants never sought to nor did fill the position previously held by Plaintiff. (Doc. 39, Att. 1 at 145-146).

Plaintiff was placed on road patrol upon his return to work, the same position he held while in the K-9 Unit, with the same rate of pay and similar benefits. (*Id*. at 63). He retired in April 2011 from post-traumatic stress disorder related to the accident. (*Id*. at 14, 90, 146, 190-191).

### III.  STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter fo law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of showing, by identifying specific evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," that there exists no genuine dispute of material fact. Fed. R. Civ. P.

-4-

56(c)(1)(A); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the movant meets its burden, it is then the opposing party's duty to "set forth specific facts showing there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56(a).

The requirement that the dispute be "genuine" is imperative. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. Therefore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252. Furthermore, the non-moving party may not merely rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

"Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007); citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court's obligation at the summary judgment stage is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Defendants request summary judgment on all seven of Plaintiff's causes of action

for substantive reasons. Additionally, Defendants seek summary judgment for procedural

reasons on all claims against the Sheriff's Office and any FLSA claims against

Defendants Kelly, Garman, and Lucas in their individual capacities. Each issue will be

addressed in turn.

## IV. PROCEDURAL ISSUES

### A. All Claims Against the Clark County Sheriff's Office

Defendants argue for dismissal of all claims against the Clark County Sheriff's

Office because it is *non sui juris* -- that is, it lacks the capacity to be sued. (Doc. 37 at 4).

To be subject to suit, the Sheriff's Office must be a real party in interest under Rule 17 of

the Federal Rules of Civil Procedure. Rule 17(b)(3) states that an entity's capacity to be

sued is determined "by the law of the state where the court is located." Under Ohio law,

a sheriff's department is not a legal entity capable of being sued. *Snyder v. Belmont*

*County Sheriff's Dept.*, 2009 WL 467022 at *4 (S.D. Ohio 2009); *Petty v. County of*

*Franklin*, 478 F.3d 341, 347 (6th Cir. 2007). Plaintiff argues that the authorities cited

*supra* are inapposite because they concern 42 U.S.C. § 1983 claims, rather than those

brought under the FLSA. (Doc. 46 at 35). However, as the Court held in *Snyder*, because

an entity's capacity to be sued is governed by the Federal Rules of Civil Procedure, Rule

17 applies equally to FLSA cases as it does 1983 actions. *Snyder* at *4 (applying the rule

to Title VII claims).[3] Accordingly, summary judgment shall be entered dismissing the

Sheriff's Office from this action.

---

[3] The practical effect of dismissing the Sheriff's Office is nil. Plaintiff has sued Sheriff Kelly in his
official capacity, where he stands in the shoes of the entity he represents, Clark County, a legal entity that
is subject to suit.

### B. FLSA Claims Against Defendants Kelly, Garman, and Lucas
###    In Their Individual Capacities

Defendants' next procedural argument pertains to Plaintiff's FLSA claims against

Defendants Sheriff Kelly, Major Garman, and Lieutenant Lucas in their individual

capacities. Defendants maintain that these claims should be dismissed on summary

judgment because the FLSA does not extend liability to public officials in their individual

capacities. (Doc. 37 at 4-5). Plaintiff does not address this argument anywhere in his 30-

plus page memorandum in opposition.

The FLSA defines employer, in relevant part, as: ". . . any person acting directly or

indirectly in the interest of an employer in relation to an employee and includes a public

agency . . ." 29 U.S.C. § 203(d). The Sixth Circuit has deemed the "directly or indirect-

ly" language to impose individual liability on private sector employers. *Mitchell v.*

*Chapman*, 343 F.3d 811, 827 (6th Cir. 2003) (citing *United States DOL v. Cole Enters.,*

*Inc.*, 62 F.3d 775 (6th Cir. 1995); *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994)).

However, neither the Supreme Court nor the Sixth Circuit has yet considered whether a

public official can be individually liable under the FLSA. *See Fraternal Order of Police*

*Barkley Lodge #60, Inc. v. Fletcher*, 618 F. Supp. 2d 712, 715 (W.D. Ky. 2008).

The Sixth Circuit has held that similar language in the Family Medical Leave Act

("FMLA") forecloses individual liability of public officials under that statutory scheme.

*Mitchell*, 343 F.3d 811 (6th Cir. 2003). In interpreting the FMLA, courts invariably look

to the FLSA for guidance. *Id*. at 827. Both statutes' definitions of "employer" include

an individual liability component and a provision specifically including public agencies within their reach - indeed, this was on purpose, as Congress modeled this section of the FMLA on the FLSA. *See Id*. at 826.

But the symmetry is incomplete. In *Mitchell*, the Sixth Circuit's exhaustive textual inquiry into the issue under the FMLA hinged, in part, on a subtle difference between the language in the later-enacted FMLA and its forerunner, the FLSA. *Id*. at 830-832. The definition of "employer" in the FMLA segregates the individual liability provision from the subsection that brings a public agency within the defined term. 29 U.S.C. §§ 2611(4)(A)(ii)(I) and 2611(4)(A)(iii). This is not so in the FLSA, where the provisions are conjoined in a single subsection, making it seem as if public agency employers are subject to individual liability. *See* 29 U.S.C. § 203(d). Some courts have stated that the relative clarity found in the FMLA was purposeful and the result of lessons learned from the jumbled and perhaps misinterpreted FLSA. *See Keene v. Rinaldi*, 127 F. Supp.2d 770, 775 (M.D.N.C. 2000); *Fraternal Order of Police Barkley Lodge #60, Inc. v. Fletcher*, 618 F. Supp. 2d at 718. The Sixth Circuit's analysis is enlightening:

> We therefore conclude that the FMLA's individual liability provision does not extend to public agencies. Three factors emanating from the text and framework of the statute support this conclusion. First, Section 2611(4)(A) segregates the provision imposing individual liability from the public agency provision. Second, an interpretation that commingles the individual liability provision with the public agency provision renders certain provisions of the statute superfluous and results in several oddities. Finally, as evidenced by other provisions of the statute, the FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions. *Mitchell*, 343 F.3d 832.

Consequently, the Sixth Circuit's analysis of the FMLA's similar definition is not altogether instructive, much less determinative, with regard to the same question under the FLSA.

Notably, several courts within the Sixth Circuit have considered the specific issue facing this Court, with contradictory results. In *Stephen v. Creal*, 2005 WL 1159411 (S.D. Ohio 2005), the court determined that a public agency employer could be individually liable under the Equal Pay Act ("EPA"), 29 U.S.C. § 203(d), an extension of the FLSA that incorporates the FLSA's definition of "employer." *Id*. at n. 6 (citation omitted). However, the court ultimately dismissed the claim against the defendant in his individual capacity because his authority "[did] not rise to the level of operational control warranting individual liability." *Id*. at *6.

In *Fraternal Order of Police Barkley Lodge # 60, Inc. v. Fletcher*, 618 F.Supp.2d 712 (W.D. Ky. 2008), the court denied a motion to dismiss by public officials - including a sheriff - sued in their individual capacities under the FLSA, finding that the plain meaning of the statute unambiguously permitted individual liability for public employers. *Id*. at 721-722. The court did emphasize that the officials were only liable to the extent that they were "supervisors acting directly or indirectly in the interest of a public agency in relation to the employee," and "seriously doubt[ed]" that all of the defendants would meet that definition. *Id*. at 722.

In *Millington v. Morrow County Board of Commissioner's*, 2007 WL 2908817 (S.D. Ohio 2007), the court intimated that the FLSA does not permit individual liability for public officials. *Id.* at *13. The court cited three main reasons for this view: that the Sixth Circuit mentioned it in *Mitchell*, 343 F.3d at 832, that it "has never extended individual liability to public employees under the FLSA;" that Congress likely unknowingly created this ambiguity when, in amending the law, it simply added "Public Agency" to the extant definition for private employers; and that Congress corrected the issue in the subsequently enacted FMLA, which essentially used a later version of the FLSA's definition of "employer," indicating that Congress "never intended to impose individual liability on public employees under the FLSA." *Millington* at *14.

In *Dixon v. University of Toledo*, 638 F.Supp.2d 847 (N.D. Ohio 2009), an EPA case filed against two college administrators individually, the court found it noteworthy that in *Mitchell*, the Sixth Circuit saw the FLSA and the FMLA as essentially twin statutes. *Id.* at 854-855 (citing *Mitchell*, 343 F.3d at 827). Yet seemingly most persuasive to the court was the notion that a public official is not an "employer" in her individual capacity "because it is only in her official capacity that she has authority over the employee's terms of employment." *Id.* at 855 (citing *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999).[4]

_____

[4] Judge Posner of the Seventh Circuit has ridiculed this view as "imply[ing] that a police officer who used excessive force against a person he was arresting could not be sued in his individual capacity because it was only by virtue of his office that he had the authority to make the arrest. Power and authority are not synonyms." *Luder v. Endicott*, 253 F.3d 1020 (7th Cir. 2001).

-10-

Nonetheless, after taking account of the conflicting case law, this Court holds that the FLSA precludes claims against public employers in their individual capacities. Of particular import is the obviously cobbled and imprecise language in the FLSA together with the intentional similarities between it and the FMLA. It would be incongruous to permit FLSA claims against individual public employers, but not claims under the FMLA, which was specifically modeled on the former.

Accordingly, Defendants' motion for summary judgment is granted as to all FLSA claims against Sheriff Kelly, Major Garman, and Lieutenant Lucas in their individual capacities, and such claims are dismissed.

## V. SUBSTANTIVE CLAIMS

### A. Claims for Unpaid Overtime Compensation Under the FLSA

The FLSA provides: "[n]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The statute provides affected employees with a private right of action to recover their unpaid overtime compensation. *See* 29 U.S.C. § 216(b). Plaintiff alleges that Defendants are liable for the overtime hours he worked training and caring for the K-9 Unit's dog.

The Sixth Circuit dealt with nearly this exact issue a decade ago in *Brock v. City of Cincinnati*, 236 F.3d 793 (6th Circuit 2001). The court fashioned a three-stage analytical

-11-

structure for such cases, asking, in successive order:

> 1) How much of the time spent by handlers in caring for their canine charges while off-duty is compensable "work" under the FLSA? 2) Is that amount of time *de minimis*, so that the FLSA does not mandate compensation? 3) Have the parties reached a reasonable agreement to compensate the handlers for non-*de minimis* time spent in "work" under the FLSA.

*Id*. at 800.

Defendants argue that Plaintiff has not shown that he performed activities amounting to compensable "work" under the FLSA because he has not produced any documentation to substantiate his alleged overtime "work" with the police dogs. As Defendants argue, "[a]bsent documentation or witnesses to verify that any such canine-related work was ever performed, there is no assurance that such time was not *de minimis* and, therefore, not deserving of any compensation whatsoever." (Doc. 49 at 7).

### 1. "Work" Under the FLSA

The first inquiry requires a definition of "work" under the FLSA. The Sixth Circuit has enunciated a tripartite definition: "work" - as used in this context - means physical or mental exertion that is: (1) "required or suffered" by the employer; and (2) "pursued necessarily and primarily for the benefit of the employer and [the employer's] business"; and (3), as to activity performed off-duty, is "an integral and indispensable part of the principal activities for which covered [employees] are employed." *Id*. (citations omitted).

Defendants argue that Plaintiff requested to be a K-9 officer, so he was not "required" to perform the various activities. (Doc. 49 at 10, n. 2). In addition, Defendants assert they had no input on most matters relating to the dog, including its selection, training, and care. (*Id.*).

Nevertheless, particularly when viewing the evidence in the best light for Plaintiff, there is a genuine dispute as to whether the off-duty activities Plaintiff performed with the dog were required by Defendants. Plaintiff claims, citing his own deposition, that Defendants did ask that he and his dog serve as the K-9 Unit. (Doc. 46 at 7). Furthermore, the Sheriff's Office clearly had a K-9 unit, even publishing policies and procedures for it, which state, for example, that the "handler is responsible for grooming and daily care of the canine," (Doc. 39, Att. 2, Ex. G at 3), and that "[e]ach Clark County Sheriff's Office canine will be housed and cared for by the handler." (Doc. 39, Att. 2, Ex. H at Bates 000012). Moreover, once Plaintiff became a K-9 officer, it would appear that he was required to perform such duty. A genuine dispute regarding this issue persists.

As to the second element, the court in *Brock* illustrated the potential inanity of a judicial inquiry into "what portion of time spent with the dogs . . . necessarily and *primarily* benefitted [Defendants]. "Examining the minutiae of how long it takes to feed a dog or clean up after it is difficult enough, but determining whether a dog got a treat or a pet or a scratch primarily for the benefit of [Defendants] borders on (and may exceed) the limits of the absurd." *Brock*, 236 F.3d at 803. Alas, here there is a genuine dispute

-13-

whether an appreciable share of Plaintiff's activities related to caring for the dogs was done necessarily and primarily for the benefit of Defendants.

Finally, there is also at least a triable dispute whether Plaintiff's "at-home off-duty dog-care efforts are a necessary and integral part of [his] principal activities as [a] law enforcement officer[]." *Id.* at 804.  In *Brock*, this element was satisfied because the evidence showed that the municipal defendant "required the officers to take the canines home with them, look after them at all times, keep them well-nourished and in good health, and have them ready for recall to active service at a moment's notice." *Id.*

The "Clark County Sheriff's Office Canine Procedures Manual" contains similar mandates: "The handler will groom the canine each day prior to reporting for duty;" the handler will "[b]e willing to devote personal time to maintenance training, care and socialization of the canine;" the handler will "[b]e able to respond to a call-out without delay and arrive at the scene within 30 minutes;" the handler will "[h]ave the support of the family to have a law enforcement working dog in the home to care for, have as a companion and a member of the family, realizing the canine must be considered in all aspects of family life including vacations, in-home events, etc.;" "[e]ach Clark County Sheriff's Office canine will be house and cared for by the handler;" "[t]he canine handler will be responsible for keeping his / her canine in good physical condition;" and "[t]he handler will be responsible for all routine maintenance tasks such as bathing, grooming, nail clipping, etc." (*See* Doc. 39, Att. 2, Ex. H at Bates 000002, 000012, & 000013).

Clearly a genuine dispute exists regarding this element as to whether Plaintiff's "at-home off-duty dog-care efforts are a necessary and integral part of [his] principal activities as [a] law enforcement officer[]."

In sum, the evidence shows that there is a genuine dispute whether Plaintiff's off-duty activities related to the police canine meet each of the elements for compensable "work" under the FLSA, and entry of summary judgment for Defendants based on whether Plaintiff's off-duty canine handling activities constitute compensable "work" under the FLSA is denied.

### 2. *De Minimis* Inquiry

Nevertheless, even if some activities qualify as "work" under the FLSA, the "work" is not compensable if the amount is *de minimis*. *Brock*, 263 F.3d at 804. *Brock* referenced three factors to determine whether otherwise compensable "work" was *de minimis*: (1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimant performed the work on a regular basis. *Brock*, 263 F.3d at 804 (citing *Lindow v. United States*, 738 F.2d 1057, 1062-1063 (9th Cir. 1984)).

*Brock* cited a Second Circuit case, *Reich v. New York City Transit Auth.*, 45 F.3d 646, 652 (2nd Cir. 1995), wherein that court employed the *de minimis* work doctrine to dismiss the plaintiff canine unit officers' claims for FLSA compensation for the tasks they performed commuting from home to work in their own cars with police dogs. *Brock*, 263 F.3d at 804. As can be imagined, the tasks were minimal and the plaintiffs' claims

failed on each factor. *Id*. In juxtaposition, the plaintiffs in *Brock* sued based on the off-duty care they provided the dogs at home. *Id*. The plaintiff officers testified that they spent more than an hour a day on such tasks, satisfying the aggregate amount and regular basis factors. *Id*. While the nature of the work did not admit of easy monitoring, any administrative difficulty was outweighed by the total amount of time spent on the tasks and their regularity, making the *de minimis* doctrine inapplicable. *Id*. at 805. The facts in *Brock* and in Plaintiff's case appear entirely parallel, and the reasoning of the former applies with equal force here.

Defendants' argument, however, goes to Plaintiff's lack of documentation verifying his time spent caring for the dogs. Defendants maintain that Plaintiff's failure to provide documentation and substantiation for his alleged off-duty, overtime "work" with the dog is fatal because he cannot prove the "work" was not *de minimis*. Plaintiff counters that it was Defendants' duty, not his, to maintain records (Doc. 46 at 15), and he did keep "detailed records of his work with the canine, training, and police activity involving the canine," but they were destroyed following his accident (*Id*. at 8-9).

As the Sixth Circuit so colorfully made clear in *Brock*, police dog handler FLSA cases, by their nature, are not amenable to a precise calculation of the time spent performing the relevant tasks. For instance, it would be impossible, indeed preposterous, to ask anyone - Plaintiff, Defendants, or this Court - to parcel out "what portion of time spent with the dogs - including feeding, playing, watching television, petting, and all the

-16-

ordinary activities owners engage in with their pets - necessarily and *primarily* benefitted [Defendants]." *Brock*, 236 F.3d at 803.

An easy solution is typically available, however, one which relates to the third inquiry in FLSA police dog handler cases: a collective bargaining agreement. The Sixth Circuit, among other courts, has noted that "the indeterminate nature of [a police dog handler's] tasks makes them exactly the sort of work as to which it makes sense for the parties to come to an agreement, to eliminate complicated, repetitious, and hard to resolve disputes about exactly how much time it took to take care of the dogs each day." *Brock*, 236 F.3d at 805 (quoting *Rudolph v. Metropolitan Airports Comm'n*, 103 F.3d 677, 681 (8th Cir. 1996)). A preference for resolving these issues through collective bargaining is also codified in federal regulations. *See* 29 CFR § 785.23.

Unfortunately, here, neither collective bargaining agreement produced in this case deals with this issue. Thus the third inquiry under *Brock* - whether the parties reached a reasonable agreement to compensate the handlers for non-*de minimis* time spent in "work" under the FLSA - is consequently irrelevant.

Defendants argue that Plaintiff cannot produce either documentation of his "work" or corroborating testimony from others and his claims should be dismissed. (Doc. 37 at 8). They cite attached affidavits from various fellow officers, whom Plaintiff listed as witnesses, who aver that they either never or rarely saw Plaintiff performing training or maintenance with the dog while off-duty. (*Id*. at 7-8). In the alternative, Defendants

assert that even if he could confirm his after-hours work with the dog, he never informed Defendants of it.

Yet Plaintiff has testified to the vast amount of time he spent training and caring for the dog while at home (*see* Doc. 46 at 14-15), and the various Sheriff's Office policies and procedures related to the K-9 Unit cited *supra* require such. Furthermore, Defendants knew Plaintiff was housing the dog, so to argue that they did not know he was caring for the dog - which is potentially compensable FLSA "work" - strains credulity. Plaintiff has also testified that he did notify Defendants of this work on several occasions. (*See Id.* at 9).

Accordingly, when viewing the evidence in the best light for Plaintiff, given the impossibility of accurately keeping track of this type of "work" that Plaintiff allegedly performed in caring for the dog off-duty, the consistency of it, the strong likelihood that the work, by its nature, was not *de minimis*, and the competing contentions regarding documentary evidence, there is no doubt that a genuine dispute exists as to whether Plaintiff performed "work" under the FLSA for which he was uncompensated. Thus, summary judgment is not granted based on Defendants' argument that Plaintiff cannot prove he performed compensable, non-*de minimis* "work."

### 3. Waiver of FLSA Claims

Alternative to arguing that Plaintiff did not perform compensable "work" under the FLSA, Defendants seek summary judgment on Plaintiff's FLSA overtime claims based on a theory of waiver. Defendants surmise that Plaintiff waived his rights under the

FLSA when he: (1) represented that he would create the K-9 Unit at no cost to the

Sheriff's Office; (2) failed to inform his superiors, "via proper submission of overtime

forms or otherwise, that he was performing work and/or incurring costs for which he

would later request compensation;" and (3) failed to use the grievance procedure created

by the collective bargaining agreement between officers and the County. (Doc. 37 at 10).

The first and second parts of Defendants' argument have been discussed *supra* and

can be disposed of expeditiously. First, Plaintiff alleges that his initial proposal was

denied and therefore irrelevant. (Doc. 46 at 6). Nevertheless, the proposal did

contemplate payment of FLSA-required overtime. (Doc. 46 at 23; Doc. 39, Att. 2 at Ex.

N). Regarding the second part, Defendants were abundantly aware that Plaintiff was

training and caring for the police dog off-duty, and Plaintiff has testified, citing support-

ing documentation, that he did seek remuneration for such work. (*See* Doc. 46 at 9).

Additionally, a failure to request overtime at the time the work is performed does not

result in waiver. *Letner v. City of Oliver Springs*, 545 F. Supp.2d 717, 724 (E.D. Tenn.

2008) (citations omitted).

Defendants' third point regarding the grievance procedure is also unpersuasive.

Defendants' argument appears to be that the grievance procedure contained in the

collective bargaining agreement is the sole forum in which Plaintiff may seek redress of

his FLSA claims, and that by failing to avail himself of this procedure, waiver resulted.

(Doc. 37 at 10-12).

However, while a collective bargaining agreement may indeed require arbitration

of statutory claims (like Plaintiff's FLSA claims), thereby barring employees from suing

in court, a collective bargaining agreement may only do so if the agreement's arbitration

provision expressly covers statutory rights. *14 Penn Plaza LLC v. Pyett*, 129 S.Ct. 1456,

1468-1469 (2009). This rule, and similar ones, "reflects the significance of the

Congressional grant of individual wage and hour protections as well as the intent to

provide 'broad access to the courts' to enforce those rights." *Figueroa v. D.C. Metro.

Police Dept.*, 658 F. Supp.2d 148, 154 (D. D.C. 2009) (rev'd on other grounds) (quoting

*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 729-730 (1981)).

Here, neither collective bargaining agreement appears to cover statutory rights, and

Defendants do not argue otherwise.[5] The existence of the grievance procedure does not

prevent Plaintiff from asserting his rights in a federal suit, and his failure to use the

grievance process, which by its terms does not cover such issues, is of no matter. Thus,

Defendants' request for summary judgment of Plaintiff's FLSA compensation claims

based on waiver is denied.

### 4. Statute of Limitations on FLSA Claims

The FLSA statute of limitations provides that claims to recover unpaid overtime

---

[5] Both agreements define a "grievance" as "an allegation by an employee(s) that there has been a breach, violation, misinterpretation or improper application of this Agreement." (Doc. 39, Att. 2, Exs. L, M at 17.3). This is as in *Figueroa* where the Court concluded: "Here, plaintiffs' CBA does not state that it covers statutory claims. Instead, it provides that '[o]nly an allegation that there has been a violation, misapplication or misinterpretation of the terms of this Agreement shall constitute a grievance under the provisions of this Grievance Procedure.'" *Id.* at 154 n. 9.

"shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Plaintiff filed suit on November 16, 2009. (*See* Doc. 2). "A cause of action is deemed to accrue, as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 188 (6th Cir. 2008) (quotations omitted). Therefore, if Defendants' alleged violations were not willful, Plaintiff may seek relief dating back to November 17, 2007. If the violations were willful, Plaintiff's potential recovery dates back to November 17, 2006. Here, Defendants argue that any violations were not willful, the two-year statute of limitations should apply, and summary judgment should be granted to that effect. (Doc. 37 at 9).

A violation is willful if an employer knew or recklessly disregarded that its conduct violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Mere negligence is insufficient. *Id.* So too is simply establishing an employer's knowledge of the FLSA's requirements. *Twaddle v. RKE Trucking Co.*, 2006 WL 840388 at *3 (S.D. Ohio 2006). Plaintiff bears the burden of proving willfulness. *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2nd Cir. 2009); *Twaddle* at *3.

To support his allegation of willfulness, Plaintiff cites his own deposition testimony, wherein he discusses a meeting Plaintiff had with Defendants Kelly and Lucas

-21-

(among others) in which Lucas mentioned that the Sheriff's Office was going bring its K-9 Unit into FLSA compliance. (Doc. 46 at 27-28; Doc. 39, Att. 1 at 142, 370). Plaintiff also points to a March 24, 2004 memorandum he sent Defendant Lucas and to his original proposal for a K-9 Unit in 1999, both of which discuss the FLSA. (Doc. 46 at 28; Doc. 39, Att. 2 at Exs. A, N).

In opposition, Defendants cite affidavits from two former officers that contradict Plaintiff's assertion and argue that "Plaintiff failed to direct the [C]ourt to any record evidence supporting this contention." (Doc. 49 at 12). Yet this ignores Plaintiff's initial proposal and subsequent memorandum. Moreover, Plaintiff's deposition testimony provides further record support.

Accordingly, viewing the evidence in the best light for Plaintiff, there is a genuine dispute as to whether Defendants alleged violations were willful and thus whether a two or three year statute of limitations should apply, and summary judgment as to this issue is denied.

### 5. Liquidated Damages

The FLSA provides that an employer who violates the overtime payment compensation requirements "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Nonetheless, district courts have the discretion not to order liquidated damages if the employer shows that "the act or omission

giving rise to such [FLSA violation] was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA] . . ." 29 U.S.C. § 260. "However, in the absence of such proof a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Solis v. Min Fang Yang*, 345 Fed. Appx. 35, 39 (6th Cir. 2009) (quotations omitted).

In neither their summary judgment motion nor their reply memorandum do Defendants specifically argue that liquidated damages are inappropriate. Defendants do argue that their violations were not willful, but that is orthogonal to the good faith and reasonable grounds standard relevant in this context. As such, summary judgment is denied as to this issue.

### 6. Conclusion on FLSA Overtime Compensation Claims

In summary, Defendants' motion for summary judgment dismissing Plaintiff's FLSA claims for unpaid overtime compensation related to his training and care for the police dog is denied. Furthermore, Defendants' motion setting the statute of limitations on such claims at two years is denied. Finally, to the extent that Defendants sought summary judgment dismissing Plaintiff's prayer for liquidated damages pursuant to the FLSA, that too is denied.

### B. Retaliation

Plaintiff's FLSA retaliation claim fails for substantive reasons. The FLSA prohibits retaliation by "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be

instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). FLSA

retaliation claims are analyzed pursuant to the burden-shifting framework of *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Pettit v. Steppingstone, Center For The*

*Potentially Gifted*, 2011 WL 2646550 at *4 (6th Cir. 2011) (citing *Adair v. Charter*

*County of Wayne*, 452 F.3d 483, 489 (6th Cir. 2006)).[6]

To establish a *prima facie* case of retaliation, Plaintiff must prove that: (1) he

engaged in protected activity under the FLSA; (2) his exercise of this right was known by

his employer; (3) his employer took an employment action adverse to him; and (4) there

was a causal connection between the protected activity and the adverse employment

action. *Adair*, 452 F.3d at 489.

Plaintiff alleges that he engaged in two acts of protected activity: (1) as Plaintiff

put it, "[p]rior to the accident, Plaintiff started insisting Defendants comply with the

FLSA," (Doc. 46 at 33); and (2) filing this lawsuit for FLSA compensation. (*Id.*). The

alleged adverse employment actions taken against him by Defendants were: "removal of

Plaintiff from K-9 detail, moving his shift from his traditional shift to an undesirable shift

and encouraging him to retire following his insistence for overtime pay." (Doc. 47, p. 13

at ¶ 58).

---

[6] "On a motion for summary judgment, the district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry. Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established. The defendant must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its action. If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Pettit*, 2011 WL 2646550 at *5 (quoting *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir.2007) (internal citations and quotation marks omitted)).

Assuming for argument's sake that the first act qualifies as protected activity under the first prong, that Defendants knew of it under the second prong, and that the various actions by Defendants satisfy the third prong, it is clear that <u>there is no causal connection between the protected activity and the adverse employment action</u>.

In his memorandum in opposition, Plaintiff cited two instances, recounted in his deposition, when he allegedly adjured Defendants to abide by the FLSA. (Doc. 46 at 9). The first was in 2002, when Plaintiff wrote an interoffice communication to Defendant Lucas. (Doc. 39, Att. 1 at 329-330; *Id*., Att. 2 at Ex. C). The second was Plaintiff's initial proposal for a K-9 Unit in 1999. (*Id*., Att. 1 at 338-339; *Id*., Att. 2 at Ex. A). The putative adverse employment actions did not occur until September of 2009, following Plaintiff's return from medical leave. (*See* Doc. 39, Att. 1 at 141-142). Seven to ten years is far too attenuated to create an inference of causality, particularly when Plaintiff does not allege other evidence or retaliatory conduct during this time frame. *See Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363-364 (6th Cir. 2001) (citing *Harrison v. Metro Gov't of Nashville & Davidson County Tenn.*, 80 F.3d 1107, 1118 (6th Cir. 1996); *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999)). That leaves the second supposed protected activity - the filing of this lawsuit. But that too will not suffice, since the alleged adverse employment actions took place *before* Plaintiff filed suit - in September versus November 2009. (Doc. 49 at 15). Logically, the actions could not be in retaliation for, or causally related to, Plaintiff's lawsuit.

There is no genuine dispute that Plaintiff cannot prove that any alleged adverse employment action taken against him was causally connected to his exercise of a protected activity under the FLSA. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's claim for retaliation, and it is dismissed.

## C. Age Discrimination Under O.R.C. § 4112.14

Plaintiff's third cause of action is for age discrimination under state law, O.R.C. § 4112.14. Plaintiff alleges that Defendants constructively discharged him from his position as an officer in the K-9 Unit following his return from medical leave and "had plans to replace [him with] a person of substantially younger age." (Doc. 4, p. 8 at ¶ 40).

O.R.C. § 4112.14(A) provides that "[n]o employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." To establish a *prima facie* case, a plaintiff must demonstrate he, "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 177 (2004) (quotation omitted). Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a nondiscriminatory reason for the discharge. If the employer demonstrates a nondiscriminatory reason, the burden shifts back to the plaintiff-employee to establish the defendant-employer's stated reason is merely a pretext for discrimination. *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 504.

As Defendants argue, Plaintiff fails to produce (or even allege) facts that could establish a *prima facie* case, as he does not aver that he "was replaced by, or [that] the discharge permitted the retention of, a person of substantially younger age." At best, Plaintiff merely pleads that Defendants planned to replace him with such a person. Plaintiff himself admitted that the K-9 Unit position in which he was previously employed has to date not been filled.

As such, Defendants are granted summary judgment dismissing Plaintiff's age discrimination claim.

### D. Hostile Work Environment

Plaintiff's claim is for hostile work environment is not clearly articulated. The amended complaint seems to reference both hostile work environment related to age discrimination as well as related to Plaintiff's taking medical leave. (Doc. 4, p. 8 at ¶ 43, 45). Yet in Plaintiff's memorandum in opposition and deposition testimony he appears to argue that the hostile work environment occurred after the filing of the this lawsuit, alleging FLSA violations, conflating two different claims, one for age discrimination hostile work environment and another for retaliation under the FLSA. (Doc. 46 at 33-34; Doc. 39, Att. 1 at 288).

In any event, Plaintiff does not attempt to explain the elements of this claim or how his case satisfies them; indeed, he does not even identify the statute or case law from which this cause of action derives. Instead, Plaintiff merely indicates three acts by Defendants (or their employees) that supposedly establish a hostile work environment. (*Id.*; *see also* Doc. 37 at 18; Doc. 39, Att. 1 at 288).

-27-

The law is clear that there is no cognizable claim for a hostile work environment resulting from the institution of an FLSA suit. Neither is there one for taking medical leave pursuant to the FMLA. If Plaintiff's fourth cause of action is for either such claim, it is dismissed.

Ohio law does recognize age-based hostile work environment claims. *Hidy Motors, Inc. v. Sheaffer*, 183 Ohio App.3d 316, 323 (2nd Dist. 2009). However, each instance of hostility cited by Plaintiff occurred after he filed this suit. (Doc. 37 at 18-19). Thus it is unclear what basis Plaintiff had for an age discrimination hostile work environment claim at the time he filed his complaint. Even so, none of the hostile work environment incidents is connected at all to Plaintiff's age,[7] nor do they demonstrate that Plaintiff's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). In short, any hostile work environment age discrimination claim fails, and summary judgment is granted.

### E. Breach of Contract

Though Plaintiff plead a separate cause of action for breach of contract, he appears

---

[7] To establish a *prima facie* case for a hostile work environment claim under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1), which Ohio law tracks, *Hidy Motors*, 183 Ohio App.3d at 323, Plaintiff must prove: (1) he is 40 years or older; (2) he was subjected to harassment, either through words or actions, based on age; (3) the harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis in liability on the part of his employer. *Crawford v. Medina General Hospital*, 96 F.3d 830, 834-835 (6th Cir. 1996).

to have abandoned it.[8]  Assuming, *arguendo*, that Plaintiff has not, it fails nonetheless.

Plaintiff alleges in his amended complaint that Defendants "entered into an enforceable

contract with the Plaintiff for Plaintiff's employment with [Defendants] as a K-9 Handler

and breached that contract when Plaintiff Campbell was constructively discharged/

demoted upon his return from medical leave."  (Doc. 4, p.10 at ¶ 46).  He further alleges

that Defendants "were obligated to maintain Plaintiff Campbell in his current position as

a K-9 Handler under the employment agreement."  (*Id*. at ¶ 49).   Plaintiff has not

produced any such contract, leaving the Court to reason from his *quantum meruit* and

promissory estoppel claims that it is oral in nature.  Plaintiff asserts Defendants breached

the supposed contract "by failing to maintain Plaintiff Campbell in the position of K-9

Handler upon his return from medical leave."  (*Id*. at ¶ 48).

　　Plaintiff's theory of breach is unavailing.  By its logic, Defendants would be

forever forbidden from removing Plaintiff from the K-9 Unit, so long as he continued to

perform his work in it.  And the reverse would also be true: Plaintiff could never leave

without breaching the agreement, so long as Defendants continued to employ him in the

K-9 Unit.  More to the point, Plaintiff cannot prove (and has not plead) the elements for

constructive discharge, and cannot show that damages resulted from his alleged demotion

from the K-9 Unit.  The claim is dismissed upon summary judgment.

---

[8]  Plaintiff mentions breach of contract only once in his memorandum in opposition, in a brief
reference to its statute of limitations. (Doc. 46 at 30). Plaintiff presents in his statement of facts filing
that "[t]he collective bargaining agreement was not the only contract between Plaintiff and Defendants"--
but he does not advert to the issue of breach. (Doc. 49, p. 12 at ¶52). Indeed, Plaintiff does not argue
the issue of breach of contract at all.

### F. Promissory Estoppel

Plaintiff's sixth count is for promissory estoppel. Plaintiff alleges that Defendants promised to keep Plaintiff as a K-9 handler when he returned from medical leave, did not do so, and Plaintiff relied upon it to his detriment (Doc. 4, p. 10 at ¶ 52-55). Yet, as Defendants argue, "[t]he doctrine of promissory estoppel is inapplicable against a state or its agencies in the exercise of a governmental function." *Hortman v. City of Miamisburg*, 110 Ohio St.3d 194, 199 (2006).

The Clark County Sheriff's Office is a state agency and the process by which it determines the duties of its deputies is an exercise of its governmental function. *See Carter v. Delaware County Board of Commissioner's*, 2009 WL 544907 at *12 (S.D. Ohio 2009) (citing *Meyers v. McGrath*, 2007 WL 1821706 at *5 (Ohio 10th Dist. 2007)). Therefore, Plaintiff's claim for promissory estoppel fails and Defendants are granted summary judgment on the claim.[9]

### G. *Quantum Meruit*

Finally, Plaintiff's seventh cause of action is a state common law claim for *quantum meruit*, also called unjust enrichment. Plaintiff alleges that he conferred certain benefits upon Defendants by personally spending time and money purchasing, training, and caring for the police dog, that Defendants knew of these benefits, and that Defendants unjustly retained them without recompense, satisfying the elements for *quantum meruit*.

---

[9] Plaintiff does not explain nor evidence how Plaintiff relied to his detriment on Defendants' putative promise to keep him in the K-9 Unit. Moreover, Plaintiff does not support or argue his promissory estoppel claim based on any case law.

(Doc. 46 at 30) (citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984)).

However, as Defendants assert, as with promissory estoppel, a "county is liable neither on

an implied contract nor upon a *quantum meruit* [theory] by reason of benefits received."

*Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio App.3d 33, 44 (8th Dist.

1998) (citations omitted).  Consequently, Defendants are granted summary judgment as to

Plaintiff's claim for *quantum meruit*.

## VI.  CONCLUSION

Accordingly, for the reasons stated herein, as to Counts 2-7, and as to the claims

against the Clark County Sheriff's Office, and as to the FLSA claims against the

Defendants in their individual capacities, there being no genuine issues of material fact in

dispute, and Defendants being entitled to entry of judgment as a matter of law on these

claims, Defendants' motion for summary judgment (Doc. 37) is **GRANTED IN PART**

**AND DENIED IN PART**, as follows:  Defendants are entitled to:

1.      Summary judgment on all claims against Defendant Clark County Sheriff's

        Office;

2.      Summary judgment on all FLSA claims against Defendants Kelly, Garman,

        and Lucas in their individual capacities;

3.      Summary judgment on Plaintiff's claim for retaliation under the FLSA;

4.      Summary judgment on Plaintiff's claim for age discrimination under O.R.C.

        § 4112.14;

5.      Summary judgment on Plaintiff's claim for "hostile work environment;"

6.    Summary judgment on Plaintiff's claim for breach of contract;

7.    Summary judgment on Plaintiff's claim for promissory estoppel;

8.    Summary judgment on Plaintiff's claim for *quantum meruit*.

Defendants are not entitled to summary judgment on Plaintiff's claim for unpaid overtime compensation under the FLSA, and Defendants' motion as to this claim is denied. Regarding that claim, summary judgment is also denied as to the length of the statute of limitations and whether liquidated damages are appropriate.

**IT IS SO ORDERED.**

Date:  8/31/11

Timothy S. Black
United States District Judge